Case No. 10-3760 Metropolitan Property v. Chester Stranczek Good morning. Good morning. Welcome. Good morning. Will the lawyers who will be addressing the court please identify yourselves. David Osborne on behalf of the plaintiffs from Metropolitan Property and Casualty Insurance Company, and Tom McNamara of the insurance company. Thank you. Chris Gehr on behalf of Chester Stranczek, the defendant's counsel. Thank you. Please, Mr. Osborne. Good morning, Your Honors. Counsel. May it please the court. My prepared statements will be very brief. I think that we've laid out a great deal of arguments in the briefs, and I think we've covered just about everything. I expect a lot of questions. And so the main point that I would want to make today is that the central legal proposition, before we get to the two-point test and the language of the exclusion and the facts of the case, is that the court should not construe a contract in a manner which leads to an absurd result. And that's exactly what the circuit court did in this case. You read the circuit court's opinion. In fact, if you read Mr. Stranczek's brief in this case, what leaps out at me from both of those is the absence of any kind of rationale for the result that was reached. It's just, here's the two-part test. Mr. Stranczek was altruistic. He didn't have a profit motive, and, therefore, his homeowner's coverage covers his commercial risks. There's no explanation for why we reach that result. Well, I don't know. I read the brief, and I read the Marco Giannakakis case written by Justice Kochia, and I find quite a bit of the logic of the briefs being reflected in that case. Well, in that case, that was a- To call it absurd is a little extreme, I think, at the beginning of your argument, because what objectives will you be left with at the end if you already start at the worst possible point? Well, in the Marco Giannakakis case, that's a completely different set of facts. In that case, the question was scope. Was he within the scope of his little condominium rental business, or was he off on a personal issue? And the Court held in that case that the argument that resulted in the fistfight at least had something to do with his collection of rent from his tenant. We actually got in the argument with somebody else across the hall, but that's a closer case. In this case, there is absolutely no question of scope. A good half of this Court's cases regarding the business pursuits exclusion concern scope. Is the insured within- Well, I think one of the basic underlying concerns in this case is to take the hobbyist out of the picture. Right. And at what point does it become a hobby? If he works for a dollar a year, is that a hobby? If he works for nothing, is that a hobby when, in fact, it's a full-time preoccupation? I said preoccupation, not occupation. Well, I suppose, you know, there is a- one of the candidates for judicial office says he will donate his hour. Does that factor alone sufficient to take that person out of the category of business, profession, or occupation? Or is there more? On the other hand, if he works for a dollar a year, does that necessarily make him a subject to business or profession or occupation? Or simply because he's getting the dollar? Or does it have to be some sort of meaningful profit as opposed to nominal profit, since we're calling any kind of income profit? Right. And at this point in time, you have the mayor of the village of Crestwood. He's getting $6,000 a year. Okay. We can focus on the fact that he gets the $6,000 a year. Is that a meaningful profit if it's a full-time preoccupation? What I don't know here, for example, is whether the village of Crestwood has a village president, whether a mayor is an honorary office for all intents and purposes, whether Medeev is a hobbyist because Putin was the- regardless of what his salary was, was the guy who controlled the strings, you know? At what point does the exclusion take effect? One suggestion is, and I wouldn't mind if there's argument centered around that, is that you look at the activity in addition to looking at the profit. You look at the activity so that someone who is in the business of selling automobiles happens to, while he's on the premises, happens to collide with some disabled person while he's going out to lunch. It may be part of his business, but is the activity the risk that is being undertaken by this policy? The nature of the risk seems to be an important factor and doesn't seem to be getting the attention that, at least in my common sense, it ought to be getting so as to determine what is meant by the exclusion. Well, I don't want to continue indefinitely because- Right. But that's where the problem for me centers. Because intuitively, viscerally, one should say, this doesn't smell like a business activity or this does smell like a business activity. And we find some courts paying lip service to activity, but they're always combining it with profit. And if they combine it with profit, what profit is meaningful? Is a nominal salary meaningful? Is $6,000 a year for a $180,000 a year executive a meaningful profit? Or is it simply something nominal? What he does with it afterwards, that's a closer question. Excuse me. Then there's the ancillary issue, which isn't touched upon in any of the briefs, including your 50-page plus brief. And I say plus because of the transparent use of constant footnotes to exceed the 50-page limit, which we all find offensive. And we think that people should be honest if they're going to run more than 50 pages. But be that as it may, not addressed in either of the briefs is the issue of how, if at all, the fact that being in that position as mayor could be beneficial in a business pursuit beyond the profit there, but, for example, in other less apparent ways. Sure. You have a trucking company or two trucking companies, and being the mayor of a municipality, which presumably would have to enter into contracts with other providers, might have some other kind of ancillary benefit. And how does that play in? Well, I certainly think that's a possibility. Certainly that would have involved quite a bit of discovery and probably a very uncertain answer at the end of the discovery, whether it helped his trucking business or not. But I think that it's a lot cleaner than that because the profit test, the so-called profit test. It doesn't apply to the occupation? It doesn't apply. Right. It can be helped. That's your first argument. This is an occupation, and the profit motive isn't really part of that equation. Now, where do you get that? From what Illinois case or from what out-of-state case are you pulling that? Well, the Illinois case I think that best answers that question is the Hoffman case, the National Guard case where the National Guardsman was involved in an accident. But he was getting paid. He was driving a truck for the Army in that case, and he was getting a salary. Sure. Where does it say? Yeah, he was getting paid. So where do you get this? Sure. Well, Chester Stransick was getting paid. No, I know, but your first argument is that there's three different elements here that are each individual, either business, profession, or occupation. Then you say this is an occupation, and you don't have to show that there's any remuneration. Right. And I'm asking you what case says that, or do they all suggest that you do have to have sort of this profit motive? Well, I think practically every case, and maybe all of the Illinois cases except Hoffman, involved businesses. I mean, most people don't. The Guardsman was getting a salary. We know that. Right. Well, the guy renting out his condominium wasn't exactly in the condominium business. He had one tenant. It's a small business, but he was getting paid for it. It was a business activity, but I wouldn't necessarily equate that to being a business. Right. Well, the court held it was excluded in that case, so apparently it was answering your threshold question, at least apparently that was enough of a threshold. I think a better illustration of the threshold issue is the Badger Mutual v. Austri case, where the boat mechanic was getting paid $75 on the side. Yeah, but he was making 10 to 15 deliveries a year as part of his adjunctive duties as being a boat mechanic. That's a lot less than $6,000. Getting back to Justice McBride's question, is there a case in Illinois that says an occupation as distinct from a business doesn't have the consideration of being a for-profit? Other than Hoffman, I don't know that the courts had an opportunity to because all of these cases have involved businesses. I mean, after all, almost everyone who works works for a business. It's either that or the government or nonprofit or something, but almost everyone works for a business. And so the question, when it's a business or when it's allegedly a business, is is it done for a profit? Take the Wiley case out of Oklahoma, for example. Your dog has puppies, you sell the puppies. I mean, maybe you do that because you just don't want eight dogs running around the house, or maybe you're running a puppy breeding business. So in order to answer that question, you look at continuity and profit. But if you work for a big puppy breeder. Is there any definition in the policy regarding business, profession, or occupation, or are we limited by the provision that says PAC doesn't cover accidents happening on your business premises and we do not cover any liability or claims connected with your business, profession, or occupation?  Those terms are not defined. That's it. Right. There's no definitional section addressing those terms. But I would submit that by using those three terms, the policy clearly communicates the intent to broadly exclude all work-related liability. Yeah. My question to you was, is there really any case law that supports your notion that the occupation isn't tied to any profit motive or whatever? Well, I think the court that says it best was the Preston case out of Washington. That's the locomotive engineer who caused a train wreck. And the court said, he's driving a train for the train company. That's all we really need to know. They didn't say anything about whether he really wanted to be an engineer or how much he was paid or what he did with his salary. Did they call it an occupation? Yes. They're very, very small. I would say you're really going out there with that notion, with that case. You're not saying that, you know, perhaps there's a difference, but I wouldn't read that case as saying what you're trying to say. I happen to have a friend who donates her time to Misericordia four times a week as a baker at no salary. Is that an occupation? Sure it is. Misericordia has a policy that covers that. Or is that a hobby? So, in other words, if she gets involved in an accident, it doesn't really matter whether they have a policy or not, excuse me. The question is whether the homeowners would apply or what you call a homeowner's policy would apply in those circumstances, not whether they happen as an entity to cover that through some commercial. If she's in an accident in the parking lot of Misericordia while she's going to or coming from work or while she's delivering a cake, is she going to have to look to Misericordia's insurance because she sure doesn't carry a commercial coverage. Right. She has her homeowners policy. She can't look to it. And I think that's what the Vukmarkovic case addresses directly, which is the primary case that my opponent relies upon. That was the limousine driver case when he dropped off his last fare and went to dinner, then went home and had the accident during that. That was covered by his homeowners. Yes, it was. It was off hours and it was covered by the homeowners. Sure. But as a limousine driver, it would have been the commercial. As a commercial exercise on behalf of his employer, it would have been covered by the commercial policy and not by the homeowners. Sure. But that case specifically held that even though he's driving the same limo, he's using it for private matters. Sure. Unlike the mayor who was actually selling water to residents in the business of Crestwood, I think your opponents will have to answer, you know, how do you say that that's a hobby or something like that? This is something that... The complaint alleges what occurred here, and that was the sale of contaminated water to residents who subsequently died, some were seriously injured, and then there were other injuries and damages. So the question is, I think maybe going back to what Justice Gordon said at the beginning, what emphasis do we put on the fact that in this case the activity is really what distinguishes your case from all the others? Scope. Scope. I think that, you know, the particular liability at issue here couldn't even arguably be personal liability because the duty that he breached is an incident of the office. The day that he retired, his liability immediately terminated. Do we know, for example, and I'm not sure it makes a difference, but do we know whether his activity was... whether he took an active or a totally passive role in this activity? In other words, is he being held as the, so to speak, you do analogize him to the chief executive of a business only in that capacity, or did he make an active, did he actively participate in deciding to bypass the admonition of the EPA or whatever, you know, that is Wellesley County? He signed the disclosure, annual disclosure forms to the EPA and allegedly had knowledge that this was going on and so on and so forth. But somebody else actually was charged with the day-by-day distribution and sale of this product. Yes, there was a chief water official, yes. So that's true. But, you know, other than... What about outside directors of corporations who are unsalaried or who receive nominal salaries to get these trips to Hawaii? Well, that's the Smith case, Smith v. USAA from California, where it was undisputed. The testimony was undisputed that the outside director received no salary whatsoever. So he's got the stransic beat there. And it was undisputed that he acted as a director solely as a favor to a friend. And so there, you know, you've got a much cleaner and better case. And, again, just like the locomotive engineer case, the California appellate court said, you know, we really don't care what your motivations are. You're sitting on a board that runs a business. And that's really all we need to know. And that's really the essence of my argument here, is that the court doesn't need to examine either profit or profit motivation. And I draw the distinction because there are many cases that... But the Illinois cases do concern the business pursuit as a... Profit is the primary ingredient. But those are businesses. Those are businesses. Those are not occupations. So it's a little bit... You know, this is based on case selection. I mean, I think that... You decide what's in front of you. Exactly. And if you're deciding what applies in the business, you look at the profit motive. Well, I was talking more at the front end, where the insured decides whether he's even going to make a claim on his homeowner's policy, much less whether a lawsuit's going to be brought, much less whether an appeal is going to be brought that results in a published opinion. There are innumerable people who are sued, along with their employers, for acts squarely within the scope of their employment and never even occurs to them to make a claim on their homeowner's policy. If they all did, then you'd have many, many, many cases like the locomotive insurance. Did he make claims on all of the policies, though, this mayor? I mean, didn't... There's other commercial policies that he brought in. Yes. Yes. As far as I know, he's made claims on every possible policy that he has. Is this ultimately, or underneath it all, is this a conflict between carriers, between Village of Crestwood's carrier and the mayor's carrier? No, I think it's more, you know, it's really a failed... You accuse Crestwood as being the manipulator of this entire piece of litigation. They're the only ones to benefit. But because their carrier disclaimed coverage successfully at an outlet. Well, it's still on appeal, so, I mean, we'll see how that turns out. So you're the only game in town as far as Crestwood is concerned, which would owe this guy indemnification if he were held liable. That's how you come into the picture. Well... And the question is whether... Supposing you hadn't paid this guy anything. Supposing you hadn't paid the mayor any amount. If the village, if he were totally, if this were totally a voluntary effort on his part, would you be able to impose the business exclusion? Forget about being a mayor being an occupation or a profession, because that, I think, is not at all intuitively so. You might find an occupation or profession in some kind of non-elective office. But when Cincinnati is in the army, he's a professional. When he goes to Rome to become council, you know, at that point, is he professional? Did he get an education training him into holding this political office that's available for any citizen with any degree of education or preparedness? Is it really viscerally appropriate to call this guy, to call this a profession and more so to call it an occupation? Is it an occupation if it's part-time, if it's only a couple of evenings a week? I'm sure you're prepared to respond to the Cincinnati analogy. In fact, it reminds me of, I saw on television just the other day, a young Marine won $29 million playing slots in Las Vegas. And he told the reporter that despite his newfound wealth, he intended to honor his commitment to the military and serve out his hitch, because the Marines had made him a man, they had showed him the world, he owed a lot to the people of the United States. The case law that we have, and I'm not saying that I necessarily would have formulated the rule in that particular fashion myself, I don't know that. But the case law that we have says to be a business, it has to be for profit. So there has to be some money involved or some equivalent of money involved. Boot, okay. So the question is whether a mayor who would volunteer his time is subject to the business exclusion or not, since he is donating his time, it's an honorary position. Even if he is involved in something that is obviously a public activity, such as the distribution of water to the citizens of the community. But if he's not getting money, case law says, he's not in business for purposes of the exclusion. And you'd be left to trying to convince us that even if it's not a business, it's a profession, even though this guy never took a course in political science in school, never trained himself, never had any elective experience. He may be of any kind to prepare himself for that job, and you have a hard time telling us it's an occupation where it's only one evening a week. Well, there's no evidence as to that. I know, but that's my hypothetical. I choose in my hypothetical to have one evening a week. And he was the chief executive officer of Crestwood, and he was paid a salary. It's not an honorary position. He was responsible for these decisions. They were within the scope of his employment. The problem is all of these elements that you say are present here are present at best at a very low level. That's why you're here. Well, you know, the question is at a marginal level, marginally in terms of the money paid, marginally in terms of the time, marginally in terms of the function being served, not ordinarily, at least in the vernacular or in what they call common sense, being considered a profession. Well, let's one at a time. The village manager is the profession. A man is then a profession. First of all, I wouldn't say that in every case where you're determining whether it's a business or not, you have to show that there was a profit motive. In all of these cases where profit is discussed, it's in the case of usually an individual who is, you know, money is changing hands, but it's a question of it could be a hobby or something. If he works for IBM, it doesn't matter whether he has a profit motive. Okay. That's the locomotive engineer case. And those cases, and one reason we cited so many cases in the brief, Your Honor, is to show there aren't any other cases like this. Well, there aren't any cases like this, but there are also, I mean, there is a salary here. There's no question that there's a salary. And I think we have some questions to ask, you know, the other side regarding that. I'd be happy to reserve the rest of my time. Thank you, Your Honor. All right. Mr. Garrett, feel free to start places other than Putin and Cincinnati, if you please. Well, I can always bring you back there. I appreciate that, Your Honor. Judge Billick correctly found below that the issue here was not clear and free from doubt, which is, of course, the burden that is on the insurer seeking to rely on an exclusion. But didn't he kind of start with the idea that he was constrained because there was an affidavit filed by Stransik's wife that said that he does get paid between $1,000 and $6,000 a year, but she said that the money was given to charity or it was used for some of his expenses, or what was the third? The third was he actually paid village costs with it. And so he said, since there was no counter affidavit, I'm left with this fact that he gave his money back, so therefore he wasn't involved for a profit motive, and therefore it's not clear. Was that really what he did? Well, I don't think that the judge below said that he felt constrained by it. There was a procedure. We filed an affidavit. There was ample opportunity for discovery and counter affidavits. How would someone counter Mrs. Stransik's statement? I think it would be relatively easy. They could take her deposition and ask her if, in fact, he did these things. They could subpoena or obtain documents. Okay, well, what about that affidavit? She's saying that he gave the money back. Does that mean, is that telling us then that he's not involved in a business pursuit? It is under the case law, Your Honor. What case says that because the wife of the employee says he gave the money back, we're not in a business, we're not involved in an occupation, this is not a profession of any kind? No case says that specifically, but the test is the profit motive test, and that's the test that the court... Well, wasn't he getting money for doing what he was doing? He was getting money for doing what he was doing. And what about what Judge Epstein mentioned earlier, that none of you or neither of you has addressed this idea that, hey, this probably assisted him greatly in his trucking business while he was mayor and CFO or whatever of both trucking companies. What about that? Well, we can only address that which is in the record, Your Honor. That is in the record. There's no question that he was simultaneously working as mayor. What you're saying is there's no evidence that this benefited him anyway. That's right. But is that telling us that we can't infer that having the job of the mayor of Crestwood didn't give him any benefit at all? Unless the insurer has produced evidence suggesting that it did, I would say exactly that, Your Honor. We don't even know from the record, and I don't remember whether these businesses are in Crestwood. We do know that he was receiving money every single year and actually was using some of that money to defray some of his expenses with the village. That's right. So that's in the record. I agree with that, Your Honor. And that, I think, is the nub of the problem. Isn't the nub of the problem that what Mr. Strancic was doing in this case was that in his position as mayor, he was involved with the sale of contaminated water by the village of Crestwood to residents who were subsequently injured, some by death, some serious injuries. Isn't that the nub of this, is that what he was doing had nothing to do with his policy, his homeowners or whatever you're calling this? What it had to do with was his activities as the mayor of Crestwood. Your Honor, I disagree with your characterization, and here's why. First of all, this isn't a homeowner's policy. No, it's something else. It's much broader. For instance, it's all the insurance you may ever need according to the terms of the policy. Right. But, Mr. Garrett, let's take the label out of it because they insist on calling it a homeowner's policy. You insist throughout your brief of saying it happens anywhere in the world and you use that quote. It really is about the definition of that exclusion regardless of that. And let me posit the question that if someone had a full-time occupation and took no salary running a non-for-profit, not-for-profit corporation, would that be covered? Would the activities that occurred there be covered? Your Honor, I believe that the answer to that question is that they would be covered. The exclusion would not apply, and here's why. The case law in this state is very well established over a period of more than 30 years that the test is a profit motive test. The insurers know that. Let me ask you this, counsel, if I might interrupt you for a moment. If he wanted to buy this coverage explicitly, would he still be paying the same premium? How much higher would that premium rise if it were disclosed in the policy that he was going to cover himself for any liability that he incurs as mayor of that community? It is disclosed in the policy plus the case law, Your Honor. The disclosure in the policy is that everything is covered other than it's just a profit. You're begging my question, counsel. Counsel, that begs the question. Because the question is how we should interpret that general language in light of the fact, since you haven't answered the question, I presume you're agreeing that the premiums would rise to the ceiling if this were explicitly covered by the policy. I would not agree to that, Your Honor. And if it would have that kind of impact on the premium, shouldn't that be a factor that we deploy in interpreting the more general, diffuse language of the policy that is nonspecific as to that particular coverage? Your Honor, there is no evidence in this record about what was taken into account in underwriting this policy or not underwriting this policy. That's not the question. But it's not a factual question pertaining to this specific policy. It's a question contained by, without confusing, it's a policy question. According to its generic meaning, determining how we will construe the provisions of this insurance contract. I don't know how we can do that. And should we look to the differential in premiums that would have been incurred if, from the get-go, this particular activity were known by the carrier to be covered? Your Honor, what I would respectfully suggest is that we cannot make these judgments in a vacuum. We don't know whether we should consider that in determining whether the policy should be construed. I mean, let's put it this way. Supposing you're a doctor and you're volunteering your services to Doctors Without Borders, et cetera. There's a malpractice exclusion. And you're being sued, and there's no malpractice. Okay. And you're being sued for a malpractice, which could these days involve a very substantial amount of money. And it's also a kind of risk that has its own underwriting and specific policies addressed that cover that kind of risk. Wouldn't the inclusion of that risk under the general language of the policy have a very substantial impact on the premiums charge, the difference being the analogous, well, not analogous, but the difference being measured by the contrast between premiums for homeowners policies and premiums for medical malpractice policies? Medical malpractice policies are in the thousands and maybe hundreds of thousands in some instances, while homeowners coverage is in the hundreds. Your Honor, I would respectfully suggest that it does not matter because there is a policy of insurance here that has to be interpreted according to the words that are in the policy and this Court's cases. May I ask about this Court's cases? Because, you know, that's a constant theme of your brief, and you revisited it in this argument for very understandable and good reasons. But as I look at it, and basically as Mr. Osborne has suggested in his argument today, courts decide what is in front of them. And can you point to a case that has been decided in this jurisdiction that really allows something like this to be claimed under a business exclusion policy? Because you're obviously a very fine lawyer, and there are other fine lawyers working with you on this case, and it is a policy that's sitting out there. We know from the record that while it won't make a difference in how we decide the case, that there has been a decision at least in the federal court that there is an exclusion that prevents the city's policy from being reached. Where has Illinois decided a case similar to this before? And if it hasn't, then maybe the construct that comes through in the business exclusion policy has been simply addressing the circumstances presented to it and hasn't ever reached this type of issue. Your Honor, it's a fair question. The answer to the question is that there's obviously no public service case like this in Illinois. As Justice Gordon referred to, I think the closest analogy is the condo owner case where the profit motive test has been applied. I think you're right. Courts decide cases, but over long periods of time, the principles on which the cases are decided are tested in many different variations. And you see that here from the National Guardsman case to the occasional babysitter case to the condo owner case and all the other cases. And what you see is that this principle, this profit motive test, is a useful place to draw the line. Because think of what the line otherwise would be. The insurers never suggest what line they would draw, but the line that they would draw is inherently at least as vague and maybe much vaguer, which is it looks like a business. Well, let me suggest once again that it's clear here that the action for which Mr. Straczyk was sued was action undertaken for the benefit of the municipality that he served as an officer. That's correct, Your Honor. All right. And so then what you're doing is you're engrafting his motivation in taking the responsibility for acting on behalf of the municipality as paramount to the fact that what he was doing was actually trying to act for the municipality. So what you would be doing is engrafting an additional layer of liability to his personal line of insurance if he should desire to be public spirited either for a municipality or a not-for-profit corporation and act on their behalf. And is that really what that exclusion is meant for? Your Honor, I think that the exclusion has to be read in light of this Court's clear precedence. But that, I don't know how you're getting around. You're saying because the salary was between $1,000 and $6,000 that this is? No. What does that mean? I am definitely not saying that because there are cases involving babysitters. So what do you do with that? This Court has decided to focus on an issue, profit motivation, and that is the test. Now, there are many other tests that could be chosen and there are many other exclusions that could be written. For instance, if the insurer doesn't like this result, the insurer could say anything for which you receive any compensation is excluded. It doesn't matter whether you're trying to make a profit or not. Or they could say all public service is excluded, whether voluntary or paid. That would be very simple and it is within their control. But what they have chosen to do is stay with an exclusion that this Court has interpreted in every case as being a profit motivation. The problem with that counsel is that if the issues seem to tilt in a certain direction, the Court will go a long way towards satisfying that tilt even though the standards or criteria are formally spelled out in a different manner, translated. It means suddenly if we find a mayor who is looking to collect for his homeowner's policy for premiums involving the sale of specifically designated under case law as a business activity when common sense tells you it should be. Guess what happens to the $6,000 in our analysis? We might as well add two zeros to it. Your Honor. Here, let's look at Mr. Stransky. Let's call him a part-time mayor. I think that's fair, Your Honor. All right. Now, we have cases and certainly going back to the early 60s that say that, you know, you can have a part-time employee. Absolutely. All right. So we've got a part-time employee and we know he's getting $6,000 a year. We know that. We do, Your Honor. The record establishes that. Now, the wife saying he gave the money back, I don't know of any case that supports the notion that that suddenly takes it out of the profit motive. I don't know any case that says that. It doesn't. I'm not suggesting there's a case that says that. But it is in fact. He's a part-time mayor and he's being compensated every single year for how many years? 28? I don't remember the number of years. All right. But, Your Honor, the question whether he's profit motivated is answered very clearly by the fact that he gave it back. That is the definition of being non-profit motivated. I don't know where you're pulling that from. Bill Gates has donated, what, $20 billion to the Gates Foundation? What does he get out of his company per year? Several million dollars? What happens if he says, my salary shall go to my foundation, which he may very well have done? I suppose that will depend on what his tax lawyers advise him to do. Does that suddenly make him less of a profession or an occupation or a business venture? Because he doesn't need the money? Your Honor, if there is no profit motivation in what he is doing, then according to the terms of the policy and the court's cases, then it is covered. It is not clearly and without doubt excluded. That would be ironical, wouldn't it? Your Honor, it would be, but it's within their control. They can write the exclusion to exclude what they think should be excluded. Can the policyholder put himself into an exclusion by an affidavit of his wife that says he gave most of the money back? The affidavit was competent evidence. Mr. Stranzic actually suffers from dementia, and so we're in a situation where the wife is the only one who can provide evidence. Now, are we going to ignore or should we ignore the theme in all of the Illinois cases, at least, that we look at whether this was a personal pursuit or whether this was a business pursuit? Are you telling us to put our blinders on and ignore that the allegations in the complaint relate to the sale of contaminated water by the village of Crestwood? He's being tagged with the village's sale of contaminated water. Now, do we put that into this case, or are we going to remove that and say this doesn't have any application at all? This Court has decided in many cases prior how you put the personal versus business into the case, which is to say was there a profit motivation? Now, that's two separate things. I'm talking about a separate portion of analyzing this, and that is the activity involved. Should we just ignore it? You absolutely have to ignore it. Because in industrial, they talk about the number of cases. They talk about the Marco Giannakis case, Stinnett, Corey, and that the thread running through all of them was that we do have to look to the purpose the insured was pursuing, the nature of the activities at the time of the incident that gives rise to the claim. Now, how can we ignore what this actual activity was? Your Honor, ignoring the activity is not the right way of looking at it. You judge the activity according to this Court's precedence by whether there was a profit motivation, and that's in Marco Giannakis. Well, any time you get paid, you can certainly infer there's a profit motive. No, you could, and if you were the fact finder, you could reach it. Profit motive is a convenient measuring stick for much of what the construct of business entails. The question is whether to allow, so to speak, the loophole created by that formalized definition to embrace functions that are clearly not those of a homeowner's function. Using the Stewart smell test, it doesn't smell like homeowners, it doesn't taste like homeowners. It quacks like a duck that walks it. It's business, but it falls through this definition. Now, if this definition were contained in a statute, you are absolutely right. The good lawyer that you are tells us. Ours is not to reason why. If it's not in the rule, the advantage goes to the insured, not the insurer. But is the rule that fixed and formulated? Or should we struggle here to expand that definition not to allow functions that are clearly business functions or professional functions to be embraced by the definition of business? What compels us to follow Giancacchus? There has no force of stare decisis. It doesn't profess, in fact, to be totally all-inclusive. But even if it did, we could differ with it. Why shouldn't we? Your Honor, a couple of reasons. One is that the power lies with the insurer to define the exclusion. And the insurer bears the risk of ill-defining the exclusion, which is what's happened here. The second and related principle is that the insurer has to show that the inapplicability of the exclusion is clear and free from doubt. And I think that Judge Billig's decision and the debate we've had here today makes clear. We are talking about a duty to defend and whether or not it is clear and free from doubt that there should be no defense. And I think that question is the proper one to answer. So if a reasonable person would not read this policy exclusion as meaning that their activity in a commercial enterprise or a municipal enterprise would be covered, would that be the guidepost that we're entitled to use? I think that if a reasonable person looked at the language of this, you are entitled to and should look at what a reasonable person would think. And the reasonable person here is looking at an exclusion that has been defined, has a content in the law. But also, Your Honor, this exclusion is not sharp. There are many sharp exclusions in the policy, like malpractice. And so I think a reasonable person could well think that this policy covered him, given the other things that are said in the policy besides the exclusion. We know that a policy has to be interpreted as a whole. And this policy, by saying this is personal liability insurance and it may be all you ever need, certainly creates in the mind of a reasonable person that everything other than specifically excluded is it. And that brings in the exclusion, the traditional business pursuits exclusion. Which has a content. What about their claim that occupation is not, that there's three separate exclusions? Any liability claims connected with your business, your profession, or occupation. What about the suggestion that the occupation doesn't tie into this notion of for-profit? Those are three words that are all used in order to describe how one earns a livelihood. How you make a profit in this kind of stilted way of talking. In the Moore case, this court interpreted a policy exclusion where the term business was defined as being a trade, occupation, or profession, and said. Was this his personal business? I'm sorry. Would you call this activity that he engaged in? Sale of contaminated water by a village to rescue people. Absolutely not. It was not a business. I guess I misspoke. Would you call this a personal activity? The personal activity, the activity that we're talking about is being mayor. And, Your Honor, it doesn't clearly fit within personal or business. It's a point of fact you can't even claim. And I'm not saying that this is necessarily something that should swing the decision. But you can't claim personal anticipation here since the village had its own public entity policy that would have covered him but for the fact that this was an intentional court or something of that nature that led at least the trial court to uphold a disclaimer under that policy. But in point of fact, there was a special policy that would have covered him. That would be the appropriate policy to cover these particular activities. Your Honor, I don't see how you would do that. So it is only the ingenuity of a top grade legal advisor that brings him to the homeowners policy. Your Honor, that's because the court is looking at it as a homeowners policy. It is a much broader than a homeowners policy. And the policy between the village and a different insurer surely is not within the four corners of this policy, which is all that the court is supposed to look at to my understanding. I think you can be assured that that is all we will look at. I agree. As I said earlier on, I think regardless of how you label it or how your opponent labels it, it's the definition of the exclusion that we look at and not a label that's attached for rhetorical purposes. Very well, Your Honor. I'd like to just summarize by saying I think the insurers are asking you to do a few things, none of which you should do and certainly not all of which you should do. One is whatever label it goes by, ignore the sense of the policy, which is clearly broader than they want to make it. Second is they want you to ignore the burden of proof on the duty to defend, which is all that's at issue here. Third is that they want you to abandon the precedents. I understand the court's point about the precedents and the rule evolves in a certain context, but they're asking this court to make up a different rule. And that I would suggest that you should not do. And finally, I think it would be unwise to decide this case based on assumptions about underwriting and about effects on homeowners insurance or whatever other insurance when there is no evidence in the record to support the assertions that are made by the insurers. If the insurers, this is a very minor liability. This is paying for lawyers to defend one guy in one case. And as everyone has said, it's... Aren't there multiple suits? No, it's one series of cases. I'm talking about one instance. But they have a policy... Might as well be a class action. But again, that doesn't matter really how many cases... The point is that this is a discrete set of facts and it is very simple for the insurers to fix this by making a specific exclusion, just as they did in connection with the malpractice doctors without orders hypothetical that you suggested, Justice Gordon. The insurer decided they didn't want to carry the burden of doctors without orders, and so they said, by the way, malpractice claims are specifically excluded. Thank you very much. Thank you. Final words, Mr. Osborne, without footnotes. Yes, Your Honor. Of course. And I'm glad you asked the question about the reasonable person standard because I think that really sort of crystallizes everything. If we were to walk out on Michigan Avenue and ask 100 people, based on the description of what Mr. Stranzik did... Michigan Avenue might not be the best choice. Well, I was going to say LaSalle Street, but I thought that's definitely how it's represented. Yeah, definitely. Describe what he did and ask them, is his job as mayor an occupation? I doubt we'd get a single negative response, and I think that's exactly the way the Court should approach the issue. It doesn't even need to reach the so-called profit standard. The second point I want to make is I want to draw a distinction here between... Well, does a volunteer identify himself by the activities that he conducts as a volunteer, even though it's on a regular basis and involving substantial expenditures of time and effort? He's not a volunteer. He claims to be a volunteer, but he was paid a salary. Well, he may not be a volunteer by Justice Epstein's criteria, if we knew what benefits his trucking companies got from village contracts and the like, but we don't know that. But in terms of the $6,000 that he gets, he's a volunteer at least for the $94,000 that he isn't getting that probably would be common to mayors of even smaller communities. Well, we know from his wife's affidavit that he didn't give back all of his salary. Some of it he used to reimburse himself. On the other hand, you have to make a definition for purposes of a policy that seems to cover the risk, and any time you try to do that, you'll miss some with that criteria. What happens to those you miss? Doesn't the court tell us that when you've missed it, guess who becomes the beneficiary of that? No. You're insured. I think our Supreme Court. It's not our job to cover your back. The term occupation is very broad and well understood to be broad enough to encompass political office. As our Supreme Court said 130 years ago in the Shuhart case, the nature of political office has not changed in that respect in 130 years. Public office is still an occupation. The plain and ordinary meaning of the term as it was used there to interpret the statute. We don't know, do we? Is there a record here of how much time was spent actually in fulfilling that mayoral function? I would think that based on the salaries, and maybe I'm not allowed to think that, and I'm not going to take judicial notice of it, but in terms of my private speculation, would be that he doesn't spend full-time at that. They didn't spend full-time. Well, back in Austria, as you indicated, and I know you run that panel in that case, 10 or 15 times a year he delivered a boat down to the harbor. Couldn't have taken more than an hour or so on 10 or 15 occasions throughout the year. That was a different kind of effort. That had written all over it, that he was doing it on a regular basis. He was doing it as when he was a boat mechanic, he was making deliveries as a boat mechanic on behalf of his employer, and he continued to make those deliveries on his own private time as well. So that had a complete identification, plus the fact he was a mechanic and the money he was paid, which was I think $75 to $100 in delivery, was meaningful money to a mechanic. That's not the case here. Surely Stransick visited City Hall more than 10 or 15 times a year, and he was paid more than $75. Yeah, but the question is, was the $6,000 here meaningful, and isn't it of relevance not to think in terms of what he chooses, not to think of him as Bill Gates donating his whatever $15 million of rock star wages that he gets, but it's $6,000, and it's not the voluntariness of his give up, but it's the nature of the $6,000 lends itself only to covering expenses, and what's left over when he's a businessman is giving some charity. I don't know that that $1,000 that he gives in charity is from his trucking company's money or his mayoral money, but it illustrates to us that it's very small, meaning not commercially meaningful to take. Well, I think the threshold issue has been conceded. Mr. Gair indicated there are cases where babysitters are paid $3 an hour, and the Court has applied the exclusion, so if there is a threshold issue, and I appreciate that you see an issue there, if there is a threshold issue here, then clearly he has exceeded it. I mean, $6,000 is a lot more than $75 or $3 an hour, but one point I wanted to make that I didn't get a chance to before is the distinction between profit and profit motive. Surely, if we show that there's a profit, a guaranteed profit in the form of a salary, surely we don't have to show that there's a motive on top of that. The Court's developed the reference to a profit motive where the excluded activity at issue was a failing business where there was no profit, and so the reference to motive expanded the reach of the exclusion. I don't think they were called an honorarium rather than a salary. We have these semantic differences, but I think they point to the relative significance of the amounts that are paid. I even take that back because I think the speeches that prominent people give that are called honorariums, they may be as many as the $2 million that President Reagan got for going to Japan to deliver it or whatever, the $50,000 that one of our Republican candidates admits to or whatever. We're reviewing this de novo, so we're not bound by the method that the trial judge used to review the allegations and the complaint, the traditional method that the courts are to use in determining whether there's a duty to defend, are we? Certainly the Court is not locked into this two-point standard. They say you've conceded that the allegations come within the terms of the policy. Well, one word with respect to discovery, and that's the affidavit of Diane Stranzik, which I'm holding in her hand, could be our statement of facts. I mean, she establishes that he was the mayor, he was paid a salary, and he did do with the salary what he wanted. I submit that the paragraphs 5 through 8 about his trucking business and he retired and he was on the board of directors and he was paid this much and he was paid that has nothing to do with this case. The fact is he was the mayor, he was paid, it was not a nominal amount of money. He did what he wanted with the money, including some of it he took out of his left pocket and put it in his right pocket and called that being reimbursed for his expenses, which he would not otherwise have an opportunity to be reimbursed for. So if the Court is going to apply that test, as my opponent suggests, the question is have they met that test here? I mean, basically what they're saying is he made a donation to charity which was less than his salary, and therefore he is a volunteer. Well, I mean, that's true of practically everyone. I mean, if that clears the hurdle that they've set up. The problem is basically, I think it's more basic than that, the problem is what leads us to think that profit is the determinant of the concept of business. And if we look at that rationale, it's not the $1 being a profit that makes that determination. It's definitely the amount involved. If it's going to be a meaningful factor in determining what a business is, are we going to come out and say, well, he got $100 for the job, therefore he's in business at a time when $100 is basically enough to buy a couple of cigars? Or are we going to look to see whether it's a significant amount? But even if it's less than zero, even if it's a loss, that's where the term motivation came into the case law, because it doesn't make any difference. It makes no difference to the insurance company whether we're insuring a profitable business or a losing business. It's the same risk, basically. Well, the policy says they don't want to be insuring those. That's what they don't want to insure, either a loser or a company that's making money. They don't want to cover business pursuits. Right, and if we were to put that to a referendum of all the policyholders ex-ante when they came in to negotiate their policies, do you want to go ahead and pay an extra premium to cover, essentially, your employer? If the horse isn't dead, he's an extremist. Thank you, Your Honors. I appreciate it. Thank you both for a very engaging and interesting presentation.